IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 18, 2001 Session

## STATE OF TENNESSEE v. RICHARD W. HERRELL, A.K.A. RICKY HERRELL

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR3525     Robert Burch, Judge**

---

**No. M1998-00767-CCA-R3-CD - Filed November 6, 2001**

---

The Appellant, Richard W. Herrell, a.k.a. Ricky Herrell, was indicted by a Dickson County Grand Jury for vandalism resulting in personal property damage of $500 to $1,000. Following a bench trial, Herrell was found guilty of the indicted charge and received a two-year suspended sentence. On appeal, Herrell raises one issue for our review: Whether the evidence presented at trial was sufficient to support his conviction. After review, we find no error and affirm the judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JERRY L. SMITH, J., joined.

Troy L. Brooks, Mt. Juliet, Tennessee, for the Appellant, Richard W. Herrell, a.k.a. Ricky Herrell.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Patricia C. Kussmann, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

No stenographic record of the trial proceedings was prepared in this case. A narrative statement of the evidence is provided as required by Tenn. R. App. P. 24(c), which recites the following facts:

The first witness called was Penny Herrell, the estranged wife of the Appellant. She and Appellant were separated and there had been some difficulty about possession

of the house. As a result of this difficulty, Appellant had been arrested some days before the incident for which Appellant is on trial. Also arrested at that time were Appellant's mother and step-father, Angie and Marvin Jones. Mrs. Herrell testified that all three were hostile toward her. She testified that she had come to the house of her sister and brother-in-law, Mr. and Mrs. Don Mathis because she had seen the Appellant on the road and feared for her safety. Mrs. Herrell did not think that Appellant knew where the Mathis' lived. Mrs. Herrell testified that she was asleep at the time and did not see what went on outside the Mathis residence on the day in question. She did testify that she woke up because of some disturbance and observed Mr. Mathis go outside. [When] he returned, he stated that the tires had been slashed. Mrs. Herrell did not see who slashed the tires. She testified that Appellant had been driving the couple's Dodge van when she saw him that morning.

The second witness was Don R. Mathis, Mrs. Herrell's brother-in-law. He testified that at about 8:45 on the morning in question, he heard something outside and looked out of the window. Outside he saw and recognized the Herrells' Dodge van and saw a male figure walk by the cars, bend down occasionally and then walk back to the van. Mr. Mathis went outside to find all tires on both cars (Mathis and Mrs. Herrell) slashed. He testified that the cost to replace the tires on both vehicles was $817.16. Mr. Mathis testified that the van that he saw was grey in color and that he knew the Herrells' van by sight.

The last state witness to testify was deputy sheriff Sgt. Billy Felts. He testified that all 8 tires had been slashed.

The Appellant first called Angie Jones, Appellant's mother. She testified that she woke up at 6 a.m. on the day in question. When she awoke, Appellant was at the table drinking coffee. Appellant stayed at her house all morning and did not leave. The van did not move from her driveway.

Next, Betty Neblett was called to the stand. Ms. Neblett is Mrs. Jones' sister. She testified that she arrived at the Jones' house about 7 a.m. on the morning in question. When she arrived, Appellant was drinking coffee. Later, Appellant got up and went to bed. She left the Jones' house about noon.

The next witness was Marvin Jones, Appellant's step-father. He testified that Appellant was drinking coffee about 6:30 a.m. on the day in question and went back to bed. He testified that by the time Ms. Neblett arrived that Appellant had already gone back to bed. Finally, he testified that the van did not move on the morning in question.

The last witness was the Appellant. He denied committing the crime. He testified that he left Jones house in the van about 5 a.m. on the morning in question and returned about 6:30 a.m.

## ANALYSIS

### Sufficiency of the Evidence

The Appellant asserts that the evidence introduced at trial is insufficient to support his conviction for class E felony vandalism. Tenn. Code Ann. § 39-14-408. Specifically, he argues that "there was overwhelming evidence that [Appellant] was not present when the act occurred," because three witnesses testified and sufficiently corroborated his alibi.

Tennessee Rules of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990). In addition, because conviction by a trier of fact removes the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

When a criminal offense is established exclusively by circumstantial evidence, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." State v. Crawford, 470 S.W.2d 610 (Tenn. 1971); State v. Jones, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances [the fact finder] could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." Crawford, 470 S.W.2d at 613; *see also* State v. McAfee, 737 S.W.2d 304, 305 (Tenn. Crim. App. 1987).

In its review of the evidence, an appellate court must afford the State the "strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982) (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "reweigh or reevaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also State v. Mann, 959 S.W.2d 503, 518 (Tenn. 1997) (quoting Marable v. State, 313 S.W.2d 451, 457 (Tenn. 1958)(weight and inferences from circumstantial evidence are jury questions)). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or the trial court judgment. Tuggle, 639 S.W.2d at 914.

In order to sustain a conviction for vandalism in this case, the State was required to prove that the Appellant (1) "knowingly cause[d] damage to or the destruction of personal property of another

. . . and (2) that the Appellant knew that he did not have the owners' effective consent."[1] Tenn. Code Ann. § 39-14-408(a).

The proof in this case established that the Appellant and his wife at the time were separated and in substantial disagreement over possession of the marital residence. The disagreement became "hostile," resulting in the arrest of the Appellant, his mother and his step-father. The wife, concerned for her safety, sought refuge in the home of her sister and brother-in-law, the victim. On the morning the victim's tires were slashed, Mrs. Herrell had seen her husband, the Appellant, driving the couple's Dodge van. Additionally, the victim testified that, on the morning that his tires were slashed, he "saw and recognized the Herrell's Dodge van and saw a male figure walk back to the van." After the van left, he found that all the tires on his car and Mrs. Herrell's car had been slashed. Based upon these facts, we find the circumstantial evidence establishes the Appellant's motive, identity, opportunity and animus toward the victim for assisting the Appellant's wife and, as such, "exclude[s] every other reasonable hypothesis save the guilt of the [Appellant]." Moreover, we reject the Appellant's argument that the testimony offered by his mother, step-father and aunt, supporting his alibi defense, clearly establishes his innocence. With respect to this proof, we would observe that the finder of fact is not compelled to believe the Appellant's version of the events, even if uncontradicted. Obviously, the trial court chose not to credit the alibi testimony. It is not the prerogative of this court to access witness credibility, that function being within the exclusive province of the trier of fact. See generally State v. Adkins, 786 S.W.2d 642, 646 (Tenn. 1990); State v. Burlison, 868 S.W.2d 713, 718-19 (Tenn. Crim. App. 1993).

In sum, we conclude that the evidence in this case, taken as a whole and in the light most favorable to the State, was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that the Appellant was guilty of vandalism. The judgment of conviction is affirmed.

 

 

_____
DAVID G. HAYES, JUDGE

---

[1] The indictment in this case alleged damage or destruction by puncturing six tires belonging to Don R. Mathis valued in excess of $500.00. On appeal, the Appellant does not contest the value of the property damaged or destroyed.